# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## OCALA DIVISION

**Case No. _____**

| | |
|---|---|
| CITY OF OCALA, | |
| Plaintiff, | |
| v. | |
| 3M COMPANY, TYCO FIRE PRODUCTS LP, CHEMGUARD, INC., BUCKEYE FIRE EQUIPMENT COMPANY, NATIONAL FOAM, INC., ANGUS FIRE ARMOUR CORPORATION, KIDDE-FENWAL, INC., KIDDE PLC, INC., UNITED TECHNOLOGIES CORPORATION, UTC FIRE & SECURITY AMERICAS CORP., INC., CHUBB FIRE, LTD., ARKEMA, INC., AGC CHEMICALS AMERICAS, INC., BASF CORP., CLARIANT CORP., DYNAX CORP., E.I. DU PONT DE NEMOURS AND CO., DUPONT DE NEMOURS, INC., CORTEVA, INC., THE CHEMOURS COMPANY, CHEMOURS COMPANY FC, LLC, | |
| Defendants. | |

## NOTICE OF REMOVAL

Defendants Tyco Fire Products LP ("Tyco") and Chemguard, Inc. ("Chemguard"), by and through undersigned counsel, hereby give notice of removal of this action, pursuant to 28 U.S.C. §§ 1442(a)(1) and 1446, from the Circuit Court of the Fifth Judicial Circuit in and for Marion County, Florida, Case No. 2020-CA-1703, to the United States District Court for the Middle District of Florida. As grounds for removal, Tyco and Chemguard state as follows:

## PRELIMINARY STATEMENT

1.      Plaintiff's claims seek to hold Tyco, Chemguard, and certain other Defendants liable based in part on their alleged conduct in designing, manufacturing, and selling firefighting chemical agents, aqueous film-forming foam ("AFFF"), which were developed for sale to the United States military and others in accordance with the military's rigorous specifications ("MilSpec AFFF").  One of the sites within the City of Ocala at which AFFF has been used and released is Ocala International Airport (the "Airport"), a "Part 139" civilian airport owned and operated by the City, which is required by law to stock and use MilSpec AFFF.  Accordingly, Tyco and Chemguard intend to assert the federal "government contractor" defense in response to Plaintiff's claims.  Under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), Tyco and Chemguard are entitled to remove this action in order to have their federal defense adjudicated in a federal forum.  Such removal "fulfills the federal officer removal statute's purpose of protecting persons who, through contractual relationships with the Government, perform jobs that the Government otherwise would have performed."  *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 133 (2d Cir. 2008).

## BACKGROUND

2.      This action was filed on October 20, 2020, in the Circuit Court of the Fifth Judicial Circuit in and for Marion County, Florida, bearing Case No. 2020-CA-1703.  DE 1-1 (Summons and Complaint).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 89(b) and 1441(a) because the Circuit Court of the Fifth Judicial Circuit in and for Marion County, Florida, is located within the Middle District of Florida.

3.      On December 10, 2020, Tyco received the initial Summons and Complaint (DE 1-1).  After this date, there have been no further proceedings in this action in the Circuit Court of the

Fifth Judicial Circuit in and for Marion County, Florida. In accordance with Local Rule 4.02(b),[1] Tyco and Chemguard have filed with this Notice of Removal copies of all process, pleadings, orders, and other papers on file in the Circuit Court of the Fifth Judicial Circuit in and for Marion County, Florida (DE 1-1; 1-2; 1-3; 1-4; 1-5). The present Notice of Removal is timely. 28 U.S.C. § 1446(b).

4.     Tyco and Chemguard are not required to notify or obtain the consent of any other Defendant in this action in order to remove Plaintiff's action as a whole under § 1442(a)(1). *See, e.g.*, *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1253 (9th Cir. 2006); *Linden v. Chase Manhattan Corp.*, 1999 WL 518836, at **1-2 (S.D.N.Y. July 21, 1999); *Torres v. CBS News*, 854 F. Supp. 245, 246 n.2 (S.D.N.Y. 1994).

5.     Plaintiff generally alleges that certain Defendants (including Tyco and Chemguard) have manufactured, marketed, and sold AFFF products that contain and/or break down into per- and polyfluoroalkyl substances (PFAS), including perfluorooctane sulfonate (PFOS), perfluoro-octanoic acid (PFOA), and perfluorohexanesulfonic acid (PFHxS), which AFFF products are or were stored, used, or discharged at various sites in or around Ocala and locations in and around Marion County. (Compl. ¶¶ 4, 107, 111, 166, 176). Plaintiff further alleges that these PFAS chemicals have contaminated resources owned or managed by Plaintiff, including "drinking water supplies and infrastructure." (*Id.* ¶¶ 2, 13). Plaintiff claims that its own PFAS testing confirms that PFAS from use of AFFF have contaminated Plaintiff's drinking water supplies, "because of the use of PFAS-laced AFFF products" at "locations in and around Marion County." (*Id.* ¶ 176).

6.     Plaintiff asserts claims for design defect (Compl. ¶¶ 209–218), failure to warn and instruct (*id.* ¶¶ 219–230), negligence (*id.* ¶¶ 231–238), public nuisance (*id.* ¶¶ 239–259), trespass

---

[1] Rule 4.02(b) remains in effect until 12:00 a.m. on January 1, 2021.

(*id.* ¶¶ 260–265), private nuisance (*id.* ¶¶ 266–284), strict liability – damages under 376.313 (*id.* ¶¶ 285–289), and unjust enrichment (*id.* ¶¶ 290–293).

7.    Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served upon counsel for Plaintiff and a copy is being filed with the Clerk of the Circuit Court of the Fifth Judicial Circuit in and for Marion County, Florida.

8.    By filing a Notice of Removal in this matter, Tyco and Chemguard do not waive the rights of any Defendant to object to service of process, the sufficiency of process, jurisdiction over the person, or venue; and Tyco and Chemguard specifically reserve the rights of all Defendants to assert any defenses and/or objections to which they may be entitled.

9.    Tyco and Chemguard reserve the right to amend or supplement this Notice of Removal.

10.    If any question arises as to the propriety of the removal of this action, Tyco and Chemguard request the opportunity to present a brief and oral argument in support of removal.

## REMOVAL IS PROPER UNDER THE FEDERAL OFFICER REMOVAL STATUTE, 28 U.S.C. § 1442(a)(1)

11.    Removal here is proper under 28 U.S.C. § 1442(a)(1), which provides for removal when a defendant is sued for acts undertaken at the direction of a federal officer.  Removal is appropriate under this provision where the removing defendant establishes that: "(a) it is a 'person' within the meaning of the statute; (b) there is a causal nexus between its actions, taken pursuant to a federal officer's directions, and plaintiff's claims; and (c) it can assert a 'colorable federal defense.'" *Durham*, 445 F.3d at 1251 (citations omitted); *see Mesa v. California*, 489 U.S. 121, 124–25, 129–31, 133–35 (1989); *Cuomo v. Crane Co.*, 771 F.3d 113, 115 (2d Cir. 2014); *Bennett v. MIS Corp.*, 607 F.3d 1076, 1085 (6th Cir. 2010); *Caver v. Cent. Alabama Elec. Coop.*, 845 F.3d 1135, 1142 (11th Cir. 2017); *Isaacson*, 517 F.3d at 135.

12.     Removal rights under the federal officer removal statute, 28 U.S.C. § 1442, are much broader than under the general removal statute, 28 U.S.C. § 1441.  Suits against defendants acting on behalf of federal officers "may be removed despite the nonfederal cast of the complaint; the federal-question element is met if the defense depends on federal law." *Jefferson Cty., Ala. v. Acker*, 527 U.S. 423, 431 (1999).  Thus, the "well-pleaded complaint" rule does not apply to removal under Section 1442, and an action may be removed under the statute so long as the *defendant's* allegations in the notice of removal show a plausible basis for assertion of a federal defense.  *See Durham*, 445 F.3d at 1253; *Acker*, 527 U.S. at 432 (crediting removing defendants' theory of the case under § 1442).  This is because § 1442 protects "the government's need to provide a federal forum for its officers and those who are 'acting under' a federal office." *Albrecht v. A.O. Smith Water Prods.*, 2011 WL 5109532, at *3 (S.D.N.Y. Oct. 21, 2011) (citations omitted).  "This statute is an incident of federal supremacy and is designed to provide federal officials with a federal forum in which to raise defenses arising from their official duties." *State of Fla. v. Cohen*, 887 F.2d 1451, 1453 (11th Cir. 1989) (citations omitted).  This important federal policy "should not be frustrated by a narrow, grudging interpretation of [§] 1442(a)(1)." *Willingham v. Morgan*, 395 U.S. 402, 407 (1969); *see Durham*, 445 F.3d at 1252.  To the contrary, 28 U.S.C. § 1442 as a whole must be liberally construed in favor of removal.  *Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 812 (3d Cir. 2016).

13.     All requirements for removal under § 1442(a)(1) are satisfied here.  *See*, *e.g.*, *Ayo v. 3M Co.*, 2018 WL 4781145 (E.D.N.Y. Sept. 30, 2018) (denying motion to remand and finding that federal officer removal was proper in case against Tyco, Chemguard, and other manufacturers of MilSpec AFFF).  In fact, in cases quite similar to this one, the judge overseeing the *In re Aqueous Film-Forming Foams Products Liability Litigation* multi-district litigation has found

several times that removal under § 1442 was proper. *See* Order, *In re Aqueous Film-Forming Foams Products Liability Litigation*, MDL No. 2:18-mn-2873-RMG, ECF No. 103 (D.S.C. May 24, 2019) ("MDL Order 1") at 3–6 (removal requirements satisfied because Tyco demonstrated that it manufactured AFFF under the guidance of the U.S. military); Order, *In re Aqueous Film-Forming Foams Products Liability Litigation*, MDL No. 2:18-mn-2873-RMG, ECF No. 320 (D.S.C. Sept. 27, 2019) ("MDL Order 2") at 3–5 (removal requirements satisfied where plaintiff's injuries were plausibly caused in part by MilSpec AFFF used at Part 139 airports); Order, *In re Aqueous Film-Forming Foams Products Liability Litigation*, MDL No. 2:18-mn-2873-RMG, ECF No. 325 (D.S.C. Oct. 1, 2019) ("MDL Order 3") at 3–6 (upholding removal where defendants alleged that plaintiff's injuries were plausibly caused in part by MilSpec AFFF used at Part 139 airport, notwithstanding plaintiff's assertion that it did not believe the airport was a source of PFAS affecting it). Given its experience with the claims and defenses in AFFF litigation, the MDL Court's rulings clearly demonstrate that this case, too, is properly removed to federal court.[2]

## A.     MilSpec AFFF

14.     Since the 1960s, the United States military has used MilSpec AFFF that meets military specifications on military bases, airfields, and Navy ships—settings where fuel fires are inevitable and potentially devastating—to train its personnel, put out fires, save lives, and protect property. Indeed, the United States Naval Research Laboratory developed AFFF in response to deadly, catastrophic fires aboard the aircraft carriers *USS Forrestal* in 1967 *and USS Enterprise* in 1969.[3] Decades later, the Naval Research Laboratory described the development of AFFF as "one

---

[2] Following removal, Tyco and Chemguard intend to designate this action for transfer to the MDL.

[3] *See* Press Release 71-09r, U.S. Naval Research Lab., Navy Researchers Apply Science to Fire Fighting (Oct. 23, 2009), https://tinyurl.com/y2jq4q4w (last visited Dec. 27, 2020).

of the most far-reaching benefits to worldwide aviation safety[.]"[4]

15. The manufacture and sale of MilSpec AFFF is governed by rigorous military specifications created and administered by Naval Sea Systems Command. The applicable specification, Mil-F-24385, was first promulgated in 1969, and has been revised a number of times since then.[5] All MilSpec AFFF products must be qualified for listing on the applicable Qualified Products List prior to military procurement. Prior to such listing, a manufacturer's products are examined, tested, and approved to be in conformance with specification requirements.[6] The MilSpec designates Naval Sea Systems Command as the agency responsible for applying these criteria and determining whether AFFF products satisfy the MilSpec's requirements.[7] After a product is added to the Qualified Products List, "[c]riteria for retention of qualification are applied on a periodic basis to ensure continued integrity of the qualification status."[8] Naval Sea Systems Command reserves the right to perform any of the quality assurance inspections set forth in the specification where such inspections are deemed necessary to ensure supplies and services conform to prescribed requirements.

16. From its inception until very recently, the MilSpec included the express requirement that MilSpec AFFF contain "fluorocarbon surfactants"—the class of chemical compounds that includes PFOA, PFOS, and Short-Chain PFAS—the very compounds at issue in

---

[4] U.S. Navy, NRL/MR/1001-06-8951, The U.S. Naval Research Laboratory (1923–2005): Fulfilling the Roosevelts' Vision for American Naval Power 37 (2006) ("Fulfilling the Roosevelts' Vision"), http://bit.ly/2mujJds (last visited Dec. 27, 2020).

[5] The 1969 MilSpec and all its revisions and amendments through April 2020 are available at https://tinyurl.com/yxwotjpg (last visited Dec. 27, 2020).

[6] Dep't of Defense SD-6, Provisions Governing Qualification 1 (Feb. 2014), https://tinyurl.com/y5asm5bw (last visited Dec. 27, 2020).

[7] *See* MIL-F-24385F (SH) at 20 (Aug. 5, 1994), https://tinyurl.com/y7hogmao (last visited Dec. 27, 2020).

[8] Dep't of Defense SD-6, at 1.

the Complaint here. This requirement has been in force for virtually the entire time period at issue in the Complaint. And although in 2019 the MilSpec removed the modifier "fluorocarbon" from "surfactants," it expressly states that "the DoD intends to acquire and use AFFF with the lowest demonstrable concentrations of . . . PFOS and PFOA" "[i]n the short term." PFOA or PFOS are unavoidably present at some concentrations in fluorocarbon surfactants, and the current MilSpec expressly contemplates that AFFF formulations will contain PFOA and PFOS (subject to recently imposed limits).

17.     Plaintiff incorrectly alleges that the "AFFF Mil Spec has no relevance to the City's claims . . . because it may bear only on AFFF manufactured for and sold to the U.S. military." (Compl. ¶ 101). So-called "Part 139" airports are those serving scheduled passenger flights by nine passenger (or larger) aircraft or unscheduled passenger flights by 31 passenger (or larger) aircraft. See 14 C.F.R. § 139.1. The federal government requires Part 139 airports to use MilSpec AFFF. On July 8, 2004, the FAA issued Advisory Circular 150/5210-6D, which stated that "AFFF agents [used by Part 139 airports] must meet the requirements of Mil-F-24385F."[9]  Although the preamble indicated that the circular was for guidance only, on February 8, 2006, the FAA issued a CertAlert clarifying that the MilSpec AFFF requirement was, in fact, mandatory and that "[a]ny AFFF purchased after July 1, 2006 by an airport operator certificated under Part 139 must meet [Mil-F-24385F]."[10]  The FAA explained:

> There are several reasons for this requirement. First of all, AFFF has to be compatible when mixed. AFFF manufactured by different manufacturers, although meeting the UL 162 standard, may not be compatible. AFFF meeting the Military Specification will always be compatible with other Military Specification AFFF no matter the manufacturer. Second, AFFF meeting the military specification requires

---

[9] See Advisory Circular 150/5210-6D at 4, Chapter 6, https://tinyurl.com/yxpk87ky (last visited Dec. 27, 2020).

[10] See DOT/FAA/TC-14/22, Impact of Alternative Fuels Present in Airports on Aircraft Rescue and Firefighting Response at 25 (Aug. 2014), https://tinyurl.com/rt35dgp (last visited Dec. 27, 2020).

less agent than AFFF meeting UL 162 to extinguish the same size fire. Finally, the requirement to use Mil Spec is in concert with the National Fire Protection Association National Fire Code 403, paragraph 5.1.2.1.[11]

18.    On September 1, 2016, the FAA issued a superseding CertAlert, which reiterated that "Airport operators must ensure any AFFF purchased after July 1, 2006, meets Mil-Spec standards."[12]    Thus, from July 1, 2006 to present, airport operators holding an FAA Airport Operating Certificate have been required to purchase MilSpec AFFF for use.

19.    The Airport, which is "owned and operated" by Plaintiff[13] and located in Marion County, is a Part 139 airport. *See* "Part 139 Airport Certification Status List," available at *https://www.faa.gov/airports/airport_safety/part139_cert/* (Row 124). As such, the Airport is required to stock and use MilSpec AFFF. On information and belief, the AFFF used and discharged at the Airport since at least 2006 has been MilSpec AFFF. There have been several aircraft fires at the Airport since 2006 that, on information and belief, required the use of MilSpec AFFF.

20.    Despite Plaintiff's attempt to plead around federal officer jurisdiction by alleging that "the AFFF resulting in the City's injuries was used at non-military sites in and around Ocala," (Compl. ¶ 101), Plaintiff acknowledges that "PFAS-based AFFF products have been stored and used . . . at hundreds of locations, such as . . . civilian airports" (*id.* ¶ 107), and it further alleges that fire training exercises involving AFFF, which "may result in the release of thousands of gallons of foam solution laced with PFAS" (*id.* ¶ 106), are "common, particularly on airfields" (*id.* ¶ 109). In the case of the Airport, the AFFF used since at least 2006 has been required to be

---

[11] *Id.* at 25-26.

[12] Federal Aviation Administration, Cert Alert No. 16-05: Update on Mil-Spec Aqueous Film Forming Foam (AFFF) at 2 (Sept. 1, 2016), https://tinyurl.com/ya5pvbkh (last visited Dec. 27, 2020).

[13]    Airport    History,    https://www.ocalafl.org/government/city-departments-j-z/ocala-international-airport/airport-history (last visited Dec. 27, 2020).

MilSpec AFFF.  Plaintiff alleges that PFAS contamination caused by AFFF has been "detected in several locations in Ocala" (*id.* ¶ 167) and that its claims center on, *inter alia*, PFAS contamination of "infrastructure" that it owns and/or manages (*id.* ¶ 2).  Because the Airport is owned and operated by Plaintiff, any AFFF releases that have occurred there are within the literal scope of Plaintiff's claims relating to PFAS contamination of City-owned "infrastructure."

21.     Plaintiff also alleges that when AFFF is used, it releases PFAS "directly into the environment in a manner enabling them to freely seep into the groundwater, contaminate drinking water supplies, and travel long distances to cause further, widespread environmental contamination."  (Compl. ¶ 105).  Plaintiff further alleges that PFAS compounds "readily spread into the natural environment upon release," are "highly mobile and readily spread in the environment," and "contaminate soils and leach from the soil into groundwater, where they can travel significant distances underground."  (*Id.* ¶¶ 62, 64).  Upon information and belief, PFAS from MilSpec AFFF used at the Airport is a source of the alleged off-site PFAS contamination that gives rise at least in part, if not in total, to Plaintiff's alleged injuries.  The Airport is on the west side of the City of Ocala and, on information and belief, is up-gradient from most of the City in terms of groundwater flow, meaning that groundwater from the area of the Airport flows east toward most of the rest of the City.  On information and belief, there are numerous drinking water wells to the east of the Airport that could serve as receptors for PFAS allegedly discharged in AFFF at the Airport.

## B.     All the Requirements of 28 U.S.C. § 1442(a)(1) Are Satisfied

### 1.     The "Person" Requirement Is Satisfied

22.     The first requirement for removal under the federal officer removal statute is satisfied here because Tyco (a limited partnership) and Chemguard (a corporation) are "persons" under the statute.  For purposes of § 1442(a)(1), the term "'person'" includes "'companies,

associations, firms, [and] partnerships[.]'" *Papp*, 842 F.3d at 812 (quoting 1 U.S.C. § 1); *see Bennett*, 607 F.3d at 1085 (holding that a non-natural entity is a "person" for purposes of § 1442(a)(1)); *Isaacson*, 517 F.3d at 135–36 (same); *Anesthesiology Assocs. of Tallahassee, Fla., P.A. v. Blue Cross Blue Shield of Fla., Inc.*, 2005 WL 6717869, at *2 (11th Cir. Mar. 18, 2005) (same); *Killam v. Air & Liquid Sys., Inc.*, 2016 WL 7438434, at *2 (M.D. Fla. Dec. 27, 2016) (same).

### 2.     The "Acting Under" Requirement Is Satisfied

23.     The second requirement ("acting under" a federal officer) is satisfied when an entity assists or helps carry out, the duties or tasks of a federal officer.  *Isaacson*, 517 F.3d at 137.  "The words 'acting under' are to be interpreted broadly[.]"  *Id.* at 136 (citations omitted); *see also Caver*, 845 F.3d at 1142 ("The phrase 'acting under' is broad and thus we 'liberally construe' this portion of § 1442(a)(1)." (citations omitted)).  Federal courts "have explicitly rejected the notion that a defendant could only be 'acting under' a federal officer if the complained-of conduct was done at the specific behest of the federal officer or agency."  *Papp*, 842 F.3d at 813.

24.     The requirement is met here because Plaintiff's claims, at least in part, challenge Tyco's and Chemguard's alleged conduct in providing vital products "that, in the absence of Defendants, the Government would have had to produce itself."  *Isaacson*, 517 F.3d at 137; *Caver*, 845 F.3d at 1144 (quoting *Watson*, 551 U.S. at 154).  MilSpec AFFF is a mission critical military and aviation safety product that, without the support of private contractors, the government would have to produce for itself.  *See Ayo*, 2018 WL 4781145, at *9 (describing MilSpec AFFF as a "mission-critical" and "life-saving product" used by all branches of the U.S. armed forces and NATO members (internal quotation marks omitted)).  The Naval Research Laboratory states that, "[a]lthough [it] was responsible for the original concepts and formulations, it was necessary to elicit the aid of the chemical industry to synthesize the fluorinated intermediates and agents to

achieve improvements in formulations."[14]   Accordingly, the military has long depended upon outside contractors like Tyco and Chemguard to develop and supply AFFF.  *See Ayo*, 2018 WL 4781145, at \*8–9 (holding that Tyco, Chemguard, and other AFFF manufacturers were "acting under" a federal officer in connection with the manufacture and sale of MilSpec AFFF); *see also* MDL Order 1 at 3–4 (finding that the "acting under" requirement was satisfied because Tyco demonstrated that it was manufacturing AFFF under the U.S. military's guidance); MDL Order 2 at 3–4 (same for AFFF used at Part 139 airport); MDL Order 3 at 3–4 (same).  If Tyco, Chemguard, and other manufacturers did not provide MilSpec AFFF for use at Part 139 airports, the government would have to manufacture and provide the product itself.

25.     In designing, manufacturing and supplying the MilSpec AFFF products at issue, Tyco and Chemguard acted under the direction and control of one or more federal officers. Specifically, Tyco and Chemguard acted in accordance with detailed specifications, promulgated by Naval Sea Systems Command, that govern AFFF formulation, performance, testing, storage, inspection, packaging, and labeling.  Further, the AFFF products in question were subject to various tests by the United States Navy before and after being approved for use by the military and for inclusion on the Qualified Products List maintained by the United States Department of Defense.[15]

### 3.     The Causation Requirement Is Satisfied

26.     The next requirement, that a defendant's actions were taken "under color of federal office . . . has come to be known as the causation requirement."  *Isaacson*, 517 F.3d at 137 (alteration, citations, and internal quotation marks omitted).   "The hurdle erected by this

---

[14] Fulfilling the Roosevelts' Vision at 37; *see also Ayo*, 2018 WL 4781145, at \*3 (same).

[15] *See* Dep't of Defense, SD-6, at 1; *see also* MIL-F-24385F (SH) at 20 (Aug. 5, 1994), https://tinyurl.com/y7hogmao (last visited Dec. 27, 2020).

requirement is quite low." *Caver*, 845 F.3d at 1144 (quoting *Isaacson*, 517 F.3d at 137). Courts "credit Defendants' theory of the case when determining whether [this] causal connection exists." *Isaacson*, 517 F.3d at 137 (citation omitted); *see also Acker*, 527 U.S. at 432.[16]

27.     "To show causation, Defendants must only establish that the act that is the subject of Plaintiffs' attack … occurred *while* Defendants were performing their official duties." *Isaacson*, 517 F.3d at 137–38 (emphasis in original); *Caver*, 845 F.3d at 1144 (explaining that the "relating to" language in Section 1442(a)(1) that is the source of the causation requirement "is broad and requires only a connection or association between the act in question and the federal office" (citation and internal quotation marks omitted)).

28.     Here, Plaintiff's claims arise at least in part from Tyco's and Chemguard's production and sale of AFFF manufactured to military specifications for use at a Part 139 airport within the City of Ocala. Plaintiff alleges that the use of PFAS in AFFF is the source of their injuries. Tyco and Chemguard contend that the use of such chemicals in MilSpec AFFF was required by military specifications. The conflict is apparent: MilSpec AFFF was developed by Tyco, Chemguard, and other manufacturers to meet specifications established by the Department of Defense. Military installations and Part 139 airports are required to employ MilSpec AFFF. The design choices Plaintiff is attempting to impose, via state tort law, would create a conflict in which Tyco and Chemguard could not comply with both the MilSpec and the purported state-prescribed duty of care. *See Boyle v. United Techs. Corp.*, 487 U.S. 500, 509 (1988); *see also Ayo*, 2018 WL 4781145, at *9 ("[T]here is evidence of a 'casual connection' between the use of PFCs in AFFF and the design and manufacture of AFFF for the government." (citation omitted)); MDL

---

[16] The "acting under" and "under color of" prongs overlap. Both "are satisfied if the actions subject to suit resulted directly from government specifications or direction." *Albrecht*, 2011 WL 5109532, at *5.

Order 1 at 5–6 ("Here, [Plaintiff]'s claims arise out of use of AFFF products that it claims Tyco manufactured and sold, and for which the U.S. military imposes MilSpec standards. The Court . . . finds that the causation element of federal officer removal is satisfied here."); *see also* MDL Order 2 at 5 (finding the causation element of federal officer removal satisfied where Tyco/Chemguard's AFFF products, "for which the military imposes MilSpec standards," were used at several Part 139 airports); MDL Order 3 at 5–6 (same as to MilSpec AFFF used at a single airport).

### 4.    The "Colorable Federal Defense" Requirement Is Satisfied

29.    The final requirement ("colorable federal defense") is satisfied by Tyco's and Chemguard's assertion of the government contractor defense.

30.    At the removal stage, a defendant need only show that its government contractor defense is colorable.  "The colorable federal 'defense need only be plausible; its ultimate validity is not to be determined at the time of removal.'"  *Caver*, 845 F.3d at 1145 (quoting *Magnin v. Teledyne Cont'l Motors*, 91 F.3d 1424, 1427 (11th Cir. 1996)).  Rather, "a core purpose of federal officer removal is to have the validity of the federal defense tried in federal court."  *Id.*; *see also Bennett*, 607 F.3d at 1089 ("[A] colorable federal defense need only be plausible . . . [and] a district court is not required to determine its validity at the time of removal.") (citations omitted); *Isaacson*, 517 F.3d at 139 ("To be 'colorable,' the defense need not be 'clearly sustainable,' as the purpose of the statute is to secure that the validity of the defense will be tried in federal court." (citation omitted)).  At the removal stage, the inquiry "is purely jurisdictional, and neither the parties nor the district courts should be required to engage in fact-intensive motion practice, pre-discovery, to determine the threshold jurisdictional issue. A merely 'colorable' defense is sufficient to 'assure the federal court that it has jurisdiction to adjudicate the case.'"  *Cuomo*, 771 F.3d at 116 (quoting *Kircher v. Putnam Funds Tr.*, 547 U.S. 633, 644 n.12 (2006)); *Caver*, 845 F.3d at 1145 ("The law

does not require that the removing defendant virtually win his case before it can be removed."
(citing *Acker*, 527 U.S. at 431)).[17]  Moreover, "this inquiry is undertaken whilst viewing the facts
in the light most favorable to Defendants[.]"  *Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770,
783–84 (E.D. Pa. 2010).   "Precisely in those cases where a plaintiff challenges the factual
sufficiency of the defendant's defense, the defendant should have the opportunity to present [his]
version of the facts to a federal, not a state, court."  *Cuomo*, 771 F.3d at 116 (alteration in original;
citation and internal quotation marks omitted); *see also Bennett*, 607 F.3d at 1090–91.

31.     Under the government contractor defense, the defendant is not liable for alleged
defects or negligence with respect to military equipment or supplies "when (1) the United States
approved reasonably precise specifications; (2) the equipment conformed to those specifications;
and (3) the supplier warned the United States about the dangers in the use of the equipment that
were known to the supplier but not to the United States."  *Boyle*, 487 U.S. at 512.

32.     Tyco and Chemguard have satisfied these elements for purposes of removal.  As
discussed above, Naval Sea Systems Command approved reasonably precise specifications,
governing MilSpec AFFF formulation, performance, testing, storage, inspection, packaging, and
labeling.  Tyco's and Chemguard's products appeared on the DOD Qualified Products List, which
could have happened only if Naval Sea Systems Command had first determined that they
conformed to the MilSpec.  *See Ayo*, 2018 WL 4781145, at *13 ("[T]here is colorable evidence
that Manufacturing Defendants' Mil-Spec AFFF is not a stock product and that the government
approved reasonably precise specifications requiring them to use PFCs, including PFOS and

---

[17] *See also Kraus v. Alcatel-Lucent*, 2018 WL 3585088, at *2 (E.D. Pa. July 25, 2018) ("A court does not
'determine credibility, weigh the quantum of evidence or discredit the source of the defense' at this stage.
Instead, [the court] only determine[s] whether there are sufficient facts alleged to raise a colorable defense."
(citations omitted)).

PFOA, in their products."); *see also id.* ("There is also colorable evidence . . . that Manufacturing Defendants' AFFF products conformed to the government's reasonably precise specifications."); MDL Order 1 at 5 (finding Tyco demonstrated a colorable defense "where it contends that its AFFF products were manufactured according to the U.S. military's MilSpec specifications"); MDL Order 2 at 4 (same, as to Tyco/Chemguard); MDL Order 3 at 5 (same, as to Tyco/Chemguard).

33.    Moreover, the government was adequately informed regarding alleged product-related "dangers," *Boyle*, 487 U.S. at 512, to exercise its discretionary authority in specifying and procuring MilSpec AFFF.  The military specifications have long included testing protocols and requirements for toxicity, chemical oxygen, and biological demand.  Indeed, it is clear that the United States has long understood that AFFF contain PFAS and may contain or break down into PFOS and/or PFOA; that AFFF constituents can migrate through the soil and potentially reach groundwater; and that it has been reported that this may raise environmental or health issues.[18]  For example, as early as October 1980, a report supported by the U.S. Navy Civil Engineering Laboratory, U.S. Air Force Engineering Service Center, and the U.S. Army Medical Research and Development Command stated that AFFF contained fluorocarbons and that "[a]ll of the constituents resulting from fire fighting exercises are considered to have adverse effects environmentally."[19]  More recently, in a November 2017 report to Congress, the Department of Defense acknowledged the concerns raised by the EPA regarding PFOS and PFOA.  Nonetheless, it still described AFFF containing PFOS or PFOA as a "mission critical product [that] saves lives

---

[18] *See, e.g.*, EPA, Revised Draft Hazard Assessment of Perfluorooctanoic Acid and its Salts, at 1–6 (Nov. 4, 2002) (excerpt).

[19] *See* Edward S. K. Chian et al., *Membrane Treatment of Aqueous Film Forming Foam (AFFF) Wastes for Recovery of Its Active Ingredients* 1 (Oct. 1980), http://www.dtic.mil/dtic/tr/fulltext/u2/a136612.pdf (last visited Dec. 27, 2020).

and protects assets by quickly extinguishing petroleum-based fires[.]"[20]  Indeed, Naval Sea

Systems Command continues to require that MilSpec AFFF contain "surfactants," and recognizes

that PFAS, including PFOS and PFOA, will be present (subject to recently imposed limits for

PFOS and PFOA)  in AFFF formulations.  *See Ayo*, 2018 WL 4781145, at *12 ("That the DoD

knows of the alleged risks of PFC-based AFFF products but continues to purchase them supports

the position that the government approved reasonably precise specifications for the claimed

defective design." (citation omitted));  MDL Order 1 at 5 ("As to whether Tyco adequately

informed the U.S. military of dangers associated with its AFFF products of which the military was

not already aware, Tyco points to materials such as a November 2017 Department of Defense

report to Congress, in which the agency acknowledged the [EPA]'s stated concerns with

PFOS/PFOA in drinking water . . . .").

34.    At minimum, these facts constitute colorable evidence that Naval Sea Systems

Command "made a discretionary determination" regarding the formulation of MilSpec AFFF after

weighing the fire-suppression benefits against the alleged risks.  *See Twinam v. Dow Chem. Co.

(In re "Agent Orange" Prod. Liab. Litig.)*, 517 F.3d 76, 90 (2d Cir. 2008); *see also Albrecht*, 2011

WL 5109532, at *5 ("A defendant is not required to warn the government where 'the government

knew as much or more than the defendant contractor about the hazards of the product.'" (citation

omitted)).  Where, as here, the government has exercised "discretionary authority over areas of

significant federal interest such as military procurement," the government contractor defense

applies.  *In re "Agent Orange" Prod. Liab. Litig.*, 517 F.3d at 89–90; *see also Ayo*, 2018 WL

4781145, at **10, 12–13.

---

[20] Dep't of Defense, Aqueous Film Forming Foam Report to Congress 1–2 (Oct. 2017) (pub. Nov. 3, 2017), https://tinyurl.com/y7chztbq (last visited Dec. 27, 2020).

WHEREFORE, Tyco and Chemguard hereby remove this action from the Circuit Court of the Fifth Judicial Circuit in and for Marion County, Florida, to this Court.

Dated: December 28, 2020                    Respectfully submitted,

                                            **CARLTON FIELDS, P.A.**

                                            By: */s/ Michael D. Sloan*
                                            Stephen J. Krigbaum (FBN 978019)
                                            (skrigbaum@carltonfields.com)
                                            Michael D. Sloan (FBN 104385)
                                            (msloan@carltonfields.com)
                                            CityPlace Tower – Suite 1200
                                            525 Okeechobee Boulevard
                                            West Palm Beach, FL 33401
                                            Tel: (561) 659-7070
                                            Fax: (561) 659-7368

                                            *Counsel for Tyco Fire Products, LP &*
                                            *Chemguard, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on December 28, 2020, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that copies of the foregoing **NOTICE OF REMOVAL,** with its Exhibits, were served on all parties on the attached Service List via first class U.S. Mail on December 28, 2020.

*/s/ Michael D. Sloan*
Michael D. Sloan

**SERVICE LIST**

| | |
|---|---|
| Vanessa Thomas<br>Charles R. Forman<br>FORMAN & THOMAS<br>723 East Fort King Street<br>Ocala, FL 34471<br>Tel. (352) 732-3915<br>vthomas.pleadings@gmail.com<br>crforman@hotmail.com<br><br>*Attorneys for Plaintiff* | Jay W. Eisenhofer<br>Kyle J. McGee<br>Diandra S. Debrosse Zimmerman<br>Viola Vetter<br>Jason Wilson<br>GRANT & EISENHOFER P.A.<br>123 Justison Street<br>Wilmington, DE 19801<br>Tel: (302) 622-7000 / Fax: (302) 622-7100<br>jeisenhofer@gelaw.com<br>kmcgee@gelaw.com<br>ddebrosse@gelaw.com<br>vvetter@gelaw.com<br>jwilson@gelaw.com<br><br>*Attorneys for Plaintiff*<br>*(not yet admitted pro hac vice)* |
| Richard F. Bulger<br>Daniel L. Ring<br>Sarah I. Rashid<br>Tyler D. Alfermann<br>MAYER BROWN LLP<br>71 South Wacker Drive<br>Chicago, IL 60606<br>Tel: (312) 782-0600 / Fax: (312) 706-8789<br>rbulger@mayerbrown.com<br>dring@mayerbrown.com<br>srashid@mayerbrown.con<br>talfermann@mayerbrown.com<br><br>*Counsel for Defendant 3M Company* | Jonathan I. Handler<br>Keith H. Bensten<br>DAY PITNEY LLP<br>One Federal Street, 29th Floor<br>Boston, MA 02110<br>Tel: (617) 345-4600 / Fax: (617) 206-9324<br>jihandler@daypitney.com<br>kbensten@daypitney.com<br><br>*Counsel for Defendants Chubb Fire, Ltd.,*<br>*Kidde-Fenwal, Inc., Kidde PLC, Inc., United*<br>*Technologies Corporation, and UTC Fire &*<br>*Security Americas Corporation, Inc.* |
| Michael L. Carpenter<br>GRAY LAYTON KERSH SOLOMON<br>FURR & SMITH, P.A.<br>516 S. New Hope Road<br>Gastonia, NC 28054<br>Tel: (704) 865-4400 / Fax: (704) 866-8010<br>mcarpenter@gastonlegal.com<br><br>*Counsel for Defendant Buckeye Fire*<br>*Equipment Company* | Keith E. Smith<br>GREENBERG TRAURIG, LLP<br>Three Logan Square<br>1717 Arch Street, Suite 400<br>Philadelphia, PA 19103<br>Tel: (215) 988-7800 / Fax: (215) 988-7801<br>smithkei@gtlaw.com<br><br>*Counsel for Defendant National Foam, Inc.* |

| | |
|---|---|
| Kirk G. Warner<br>Clifton L. Brinson<br>Addie K.S. Ries<br>SMITH, ANDERSON, BLOUNT,<br>DORSETT, MITCHELL & JERNIGAN, LLP<br>Wells Fargo Capital Center<br>150 Fayetteville Street, Suite 2300<br>Raleigh, NC 27601<br>Tel: (919) 821-1220 / Fax: (919) 821-6800<br>kwarner@smithlaw.com<br>cbrinson@smithlaw.com<br>aries@smithlaw.com<br><br>*Counsel for Defendant Dynax Corporation* | Marissa L. Curran<br>Britton St. Onge<br>POLSINELLI PC<br>100 S. Fourth Street, Suite 1000<br>St. Louis, MO 63102<br>Tel: (314) 889-8000 / Fax: (314) 231-1776<br>mcurran@polsinelli.com<br>bstonge@polsinelli.com<br><br>*Counsel for Defendants Corteva, Inc. and DuPont de Nemours, Inc.* |
| Stephen M. Nichols<br>Farah S. Nicol<br>POLSINELLI LLP<br>2049 Century Park East, Suite 2900<br>Los Angeles, CA 90067<br>Tel: (310) 556-1801 / Fax: (310) 556-1802<br>snichols@polsinelli.com<br>fnicol@polsinelli.com<br><br>*Counsel for Defendants Corteva, Inc. and DuPont de Nemours, Inc.* | David R. Erickson<br>Brent Dwerlkotte<br>Maurissa Rushton<br>SHOOK, HARDY & BACON L.L.P.<br>2555 Grand Blvd.<br>Kansas City, MO 64108<br>Tel: (816) 474-6550 / Fax: (816) 421-5547<br>derickson@shb.com<br>dbdwerlkotte@shb.com<br>mrushton@shb.com<br><br>*Counsel for Defendants E.I. du Pont de Nemours and Company, The Chemours Company, and The Chemours Company FC, LLC* |
| Angus Fire Armour Corporation<br>c/o The Prentice-Hall Corp. System, Inc.<br>251 Little Falls Drive<br>Wilmington, DE 19808 | Arkema, Inc.<br>c/o Corporation Service Company<br>1201 Hays Street<br>Tallahassee, FL 32301-2525 |
| AGC Chemicals Americas, Inc.<br>c/o The Corporation Trust Company<br>Corporation Trust Center<br>1209 Orange Street<br>Wilmington, DE 19801 | BASF Corp.<br>c/o CT Corporation System<br>1200 S. Pine Island Road<br>Plantation, FL 33324 |
| Clariant Corporation<br>c/o Corporation Service Company<br>1201 Hays Street<br>Tallahassee, FL 32301-2525 | |